# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

| | |
|---|---|
| JOSE GARCIA AVILA, MARIO ALVAREZ DELGADILLO, ALVARO BONILLA GOMEZ, MANUEL BONILLA GOMEZ, GABRIEL GOMEZ LOPEZ, ISIDRO IBARRIA BONILLA, OCTAVIO MARTINEZ SANDOVAL, JORGE MARTINEZ ZEPEDA, RAMSET MARTINEZ ZEPEDA, LEO NAVA BOBADILLA, RAMON NAVA BOBADILLA, JOSE VILLEGAS HERNANDEZ, JUAN ZEPEDA GOMEZ, JOSE ZEPEDA GOMEZ, <br><br> Plaintiffs, <br><br> v. <br><br> PRIDE HARVESTING, LLC, and RAYMOND OZUNA, <br><br> Defendants. | Civil Action No.: 7:19-cv-168 |

## COMPLAINT

## PRELIMINARY STATEMENT

Plaintiffs are agricultural guest workers from Mexico who were recruited and hired by Defendants to work in Defendants' vegetable crop harvesting and packing operations in various states, including Georgia, in 2018. Once Plaintiffs were in Defendants' employment, Defendants failed to pay Plaintiffs the promised wages, made improper wage deductions from Plaintiffs' paychecks, housed Plaintiffs in overcrowded housing, and failed to timely reimburse Plaintiffs for travel and subsistence costs expended by Plaintiffs for the benefit of Defendants. Plaintiffs

1

bring this action to vindicate their rights under the Fair Labor Standards Act ("FLSA"),[1] and under contract law.  Plaintiffs seek their unpaid wages, statutory liquidated damages, damages that arose from Defendants' breaches of contract, pre- and post-judgment interest, costs, and reasonable attorneys' fees.

## JURISDICTION AND VENUE

1. This Court has jurisdiction of this action pursuant to:

    (a) 28 U.S.C. § 1331 (Federal Question);

    (b) 29 U.S.C. § 1337 (Interstate Commerce);

    (c) 29 U.S.C. § 216(b) (FLSA); and

    (d) 28 U.S.C. § 1367 (Supplemental).

2. This Court has supplemental jurisdiction over the state law claims because they are so related to Plaintiffs' federal FLSA claims that they form part of the same case or controversy under Article III, Section II of the U.S. Constitution.

3. Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b), and M.D. Ga. Local Rule 3.4, because a substantial part of the events or omissions giving rise to Plaintiffs' claims arose in this district and division.

## PARTIES

4. At all times relevant to this action, Plaintiffs Jose Garcia Avila, Mario Alvarez Delgadillo, Alvaro Bonilla Gomez, Manuel Bonilla Gomez, Gabriel Gomez Lopez, Isidro Ibarria Bonilla, Octavio Martinez Sandoval, Jorge Martinez Zepeda, Ramset Martinez Zepeda, Leo Nava

---

[1] 29 U.S.C. § 201, *et seq.*

Bobadilla, Ramon Nava Bobadilla, Jose Villegas Hernandez, Juan Zepeda Gomez, and Jose Zepeda Gomez were citizens of Mexico who were admitted into the United States on a temporary basis, to work for Defendants under the auspices of the H-2A program.[2]

5. Defendant Pride Harvesting, LLC, a Florida corporation, is an H-2A Labor Contractor ("H2ALC") in that it recruited, solicited, hired, employed, furnished, housed, and/or transported H-2A workers, and is not a fixed-site employer, an agricultural association, or an employee of a fixed-site employer or agricultural association.[3]

6. At all times relevant to this action, Defendant Pride Harvesting, LLC operated its H-2A labor contracting business in various locations throughout the United States, including in Tift County, Georgia.

7. Defendant Raymond Ozuna is a resident of Lee County, Florida, and the owner and operator of Pride Harvesting, LLC.

8. At all times relevant to this action, both Defendants were employers of Plaintiffs, under the FLSA, in that they suffered or permitted Plaintiffs to work.[4]

9. Defendant Raymond Ozuna had operational control over Pride Harvesting, LLC., as he was involved in hiring and supervising Plaintiffs and paying their wages.

10. Plaintiffs were economically dependent on Defendants for their wages.

11. Plaintiffs were dependent on Defendants to provide them with employment, housing, transportation, and the tools and equipment necessary to perform the work.

---

[2] 8 U.S.C. § 1188 and 20 C.F.R. § 655.0, *et seq*
[3] See definition of H-2A Labor Contractor at 20 C.F.R. § 655.103.
[4] 29 U.S.C. § 203(g)

12.     Plaintiffs lived in employer-provided housing in various locations, including Tift County, Georgia.

13.     At all times relevant to this action, all Defendants had the right to control the manner and means by which Plaintiffs' work was accomplished.

14.     Under Defendants' employment, Plaintiffs were harvesting and packing various vegetable crops for sale in interstate commerce.

15.     Under Defendants' employment, Defendants moved all Plaintiffs between Mexico and Georgia to work; and moved some Plaintiffs between Georgia and other states to work.

16.     Under Defendants' employment, Plaintiffs handled or otherwise worked on goods or materials that had been moved in or produced for interstate commerce.

## STATUTORY AND REGULATORY STRUCTURE OF THE H-2A PROGRAM

17.     An agricultural employer in the United States may bring temporary foreign workers ("H-2A workers") to the U.S. if the United States Department of Labor ("USDOL") certifies that (1) there are not enough U.S. workers to perform the job, and (2) the employment of H-2A workers will not adversely affect the wages and working conditions of U.S. workers who are similarly employed.[5]  These provisions, along with the implementing federal regulations, are commonly referred to as the "H-2A program."

18.     Under the H-2A program, employers must file a temporary labor certification application with the USDOL's Employment and Training Administration.[6]  The application must include a job offer, known as a "job order," which is used in the recruitment of both U.S. and

---

[5] 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1188(a)(1)
[6] 20 C.F.R. § 655.130

H-2A workers and becomes the work contract of the employed workers.[7]

19. If an employer's job order meets the minimum regulatory requirements and is otherwise valid, U.S. worker availability is tested by use of the interstate Employment Service System[8] and by the employer's own hiring efforts. If it is determined that sufficient U.S. workers are not available to fill the jobs, the USDOL certifies the need for temporary foreign workers, and the Department of Homeland Security issues H-2A visas for the number of job opportunities requested by the employer and not filled by U.S. workers.

20. The job order must comply with the applicable H-2A regulations that establish the minimum benefits, wages, and working conditions which must be offered in order to avoid adversely affecting similarly-employed U.S. workers.[9]

21. The H-2A regulations require, in part, the following:

    (a) If the worker is paid by the hour, the employer must pay the worker, at least, the Adverse Effect Wage Rate ("AEWR"), or the Federal or State minimum wage rate, in effect at the time work is performed, whichever is highest, for every hour or portion thereof worked during a pay period.[10]

    (b) If the worker is paid on a piece rate basis and the worker's earnings do not result in average earnings of, at least, the AEWR, then the worker's pay must be supplemented so that the worker's earnings are, at least, as much as the worker would have earned had the worker been

---

[7] *See* 20 C.F.R. § 655.103(b) (definition of "work contract").
[8] Employment Service (ES) refers to the national system of public ES offices described under the Wagner-Peyser Act. Employment services are delivered through a nationwide system of one-stop centers, and are managed by State Workforce Agencies (SWA's), and funded by the USDOL. *See* 20 C.F.R. § 651.10, (definition of "Wagner-Peyser Act Employment Service").
[9] 20 C.F.R. § 655.121(a)(3)
[10] 20 C.F.R. § 655.122(l)

5

paid the AEWR.[11]

(c) The employer either must provide each worker with three meals per day or must furnish free and convenient kitchen facilities to the workers so that the workers can prepare their own meals. Where the employer provides the meals, the job order must state the charge, if any, to the worker for such meals.[12]

(d) If the worker completes 50 percent of the work contract period, the employer must pay the worker for reasonable costs incurred by the worker for transportation and daily subsistence from the place from which the worker has come to work for the employer to the place of employment.[13]

(e) If the worker completes the work contract period, or is terminated without cause, the employer must provide or pay for return transportation and subsistence expenses from the employer's worksite to "to the place from which the worker . . . came to work for the employer" at the end of the contract.[14]

(f) The employer must provide housing to the workers, free of charge, and the housing must meet federal and local standards.[15]

(g) The employer must keep accurate and adequate records with respect to the workers' earnings, including but not limited to: field tally records, supporting summary payroll records, and records showing the nature and amount of the work performed; the number of hours of work offered each day by the employer; the hours actually worked each day by the worker; the time

---

[11] 20 C.F.R. § 655.122(l)(2)(i)
[12] 20 C.F.R. § 655.122(g)
[13] 20 C.F.R. § 655.122(h)(1)
[14] 20 C.F.R. § 655.122(h)
[15] 20 C.F.R. § 655.122(d)

the worker began and ended each workday; the rate of pay (both piece rate and hourly, if applicable); the worker's earnings per pay period; the worker's home address; and the amount of and reasons for any and all deductions taken from the worker's wages.[16]

(h)  The employer must furnish to each worker, on or before each payday, a written statement that includes, among other items: the worker's total earnings for the pay period; the worker's hourly rate and/or piece rate of pay; the hours of employment offered to the worker; the hours actually worked by the worker; an itemization of all deductions made from the worker's wages; and, if piece rates are used, the units produced daily.[17]

(i)  The employer must provide to each H-2A worker, no later than the time at which the worker applies for the visa, a copy of the work contract between the employer and the worker in a language understood by the worker as necessary or reasonable.[18]

## STATEMENT OF FACTS

### Georgia Employment Contract

22. On or around February 2018, Defendants submitted job order number 2050224434 (the "Georgia Job Order") to the Georgia Department of Labor, and an Application for Temporary Employment Certification, (the "Georgia Application for Certification"), to the USDOL.

23. The approved Georgia Job Order, (Attached as Exhibit 1), included, but was not limited to, the following terms:

(a)  Work to begin on or after April 15, 2018 and continue until July 4, 2018.

(b)  Anticipated hours of work of at least 35 hours per week.

---

[16] 20 C.F.R. § 655.122(j)(1)
[17] 20 C.F.R. § 655.122(k)
[18] 20 C.F.R. § 655.122(q)

(c)     Job duties to include grading, sorting, loading, picking and packing of various crops; specifically: squash/zucchini, okra, bell pepper, eggplant, pickles, jalapenos, butterbeans/peas, and watermelons.

(d)     An hourly wage of not less than the AEWR, or $10.95 per hour, or a piece rate,[19] whichever was higher.

(e)     Free housing that met local, state, and federal requirements.

(f)     Three meals per day (breakfast, lunch, dinner) for a charge of $12.07 per day.

(g)     Timely reimbursement of inbound and outbound transportation and subsistence costs between place of recruitment and employer's work site.

24.     The terms and conditions of the Georgia Job Order, together with the requirements of 20 C.F.R. § 655, constituted a job offer.

25.     This job offer, when accepted, created a work contract between Defendants and each Plaintiff who accepted the offer.

26.     The work contract at issue here incorporates a promise to "comply with applicable Federal and State minimum wage . . . and other employment-related laws."[20]

27.     By promising to pay the federally-mandated wage rate, Defendants also promised to pay that wage free and clear without deductions for items for the employers' benefit or without reducing the workers' wages by shifting costs to those workers.

---

[19] Piece rates: $2/box for squash/zucchini; $1.50/box of okra, bell pepper, eggplant; $3/box of pickles, jalapenos, butterbeans/peas; $35/bus to cut watermelons; and $100/bus to load/unload watermelons.
[20] *See* 20 C.F.R. § 655.135(e)

28. On behalf of Defendants, Plaintiffs were recruited in their hometowns in Mexico, to work for Defendants under the terms of the Georgia Job Order.

29. Plaintiffs accepted the offers of employment under the terms of the Georgia Job Order and traveled to Georgia to work for Defendants.

Pre-Employment Expenses

30. Defendants, either directly or through agents, recruited Plaintiffs from their respective home villages in Mexico, and required, as a condition of hire, that each Plaintiff pay to Defendants' agent in Mexico a sum of money to cover various processing and travel expenses.

31. In addition to the fees paid directly to Defendants' agent in Mexico, Plaintiffs also had to pay for their own:

    (a) Travel from their hometowns in Mexico to the U.S. Consulate in Monterrey, Mexico, for the interview necessary to obtain an H-2A visa; and

    (b) Meals during the time they had to stay in Monterrey to complete their visa processing, and during their trip from Monterrey to Georgia.

32. The expenses described in paragraphs 30 and 31 were costs necessary to enter the U.S. as an H-2A worker and were incurred for the benefit of Defendants.[21]

33. The expenses described in paragraphs 30 and 31 were made before receipt of Plaintiffs' first paychecks.

---

[21] 29 C.F.R. §§ 531.32(c) and 778.217

34. Defendants did not reimburse Plaintiffs for the expenses described in paragraphs 30 and 31, in their first paycheck, to the extent that those expenses brought Plaintiffs' first week's wages below the federal minimum wage.

35. Defendants did not reimburse Plaintiffs fully for the expenses described in paragraphs 30 and 31, at the time Plaintiffs completed 50% of their contracts.

Living and Working Conditions

36. Defendants housed Plaintiffs in dilapidated motels, and did not provide enough rooms, so that there were not enough beds for each Plaintiff, and Plaintiffs were forced to share beds or sleep on the floor.

37. Plaintiffs worked for Defendants harvesting and packing various vegetable and fruit crops, including harvesting crops that were not listed in the job order.

38. During most weeks, Plaintiffs worked seven days per week and over twelve hours per day, without adequate meal breaks.

39. In some instances, some of the Plaintiffs had to work an evening shift in the packinghouse after having worked a full day's shift in the field.

40. Defendants failed to pay Plaintiffs for all compensable hours worked, including for time spent waiting at the worksite for the produce to dry before harvesting activities could begin in the morning.

41. During harvesting activities, Defendants paid Plaintiffs solely on a piece-rate basis, without regard to the number of hours worked.

42. During packinghouse activities, Defendants failed to credit and pay Plaintiffs for all compensable hours worked.

43. Plaintiffs' weekly earnings fell below the applicable federal minimum wage.

44. Plaintiffs' weekly earnings fell below the contractually-promised AEWR.

45. Defendants did not supplement Plaintiffs' weekly earnings to ensure that they received the wages required by the FLSA and their employment contracts.

46. Defendants failed to make, keep, preserve, and retain accurate employment records, as required by the FLSA,[22] and by the H-2A regulations.[23]

47. Defendants provided Plaintiffs with earning statements containing inaccurate information regarding the amount of hours worked, units harvested, and wages earned by Plaintiffs.

48. Defendants failed to provide Plaintiffs three meals per day, as promised in the work contract, and the meals that were actually provided by Defendants were inadequate.

49. Defendants deducted meal charges from Plaintiffs' paychecks.  The amount deducted by Defendants for meals exceeded the actual cost incurred by Defendants for those meals.

50. Defendants took some of the Plaintiffs to work for Defendants in worksites outside of Georgia, including Florida, South Carolina, and Delaware, in violation of the H-2A regulations and the work contracts between the parties.

51. The housing provided by Defendants to the Plaintiffs in those out-of-state locations did not comply with local and federal minimum housing standards, or with H-2A regulations.

---

[22] 29 C.F.R. § 516.2(a)
[23] 20 C.F.R. § 655.122(j)

11

<u>Wisconsin Employment Contract - Plaintiff Alvaro Bonilla Gomez</u>

52. On or around April 2018, Defendants submitted job order number 2309436 (the "Wisconsin Job Order") to the Wisconsin Department of Workforce Development, and an Application for Temporary Employment Certification, (the "Wisconsin Application for Certification"), to the USDOL.

53. The approved Wisconsin Job Order, (Attached as Exhibit 2), included, but was not limited to, the following terms:

    (a) Work to begin on or after June 24, 2018 and continue until August 5, 2018.

    (b) Anticipated hours of work of at least 35 hours per week.

    (c) Job duties to include detasseling corn.

    (d) An hourly wage of not less than the AEWR, or $13.06 per hour, or piece rate of $70 per acre, whichever was higher.

    (e) Free housing that met local, state, and federal requirements.

    (f) Three meals per day, for a charge of $12.26 per day.

    (g) Timely reimbursement of inbound and outbound transportation and subsistence costs between place of recruitment and employer's work site.

54. The terms and conditions of the Wisconsin Job Order, together with the requirements of 20 C.F.R. § 655, constituted a job offer.

55. This job offer, when accepted by Plaintiff Alvaro Bonilla Gomez, created a work contract between Defendants and Plaintiff.

56. The work contract at issue here incorporates a promise to "comply with applicable Federal and State minimum wage . . . and other employment-related laws."

57. Defendants offered Plaintiff Alvaro Bonilla Gomez work under the terms of the Wisconsin Job Order.

58. Plaintiff Alvaro Bonilla Gomez accepted the offer of employment under the terms of the Wisconsin Job Order.

59. Upon completion of the Georgia Job Order, Plaintiff Alvaro Bonilla Gomez continued to work for Defendants pursuant to the Wisconsin Job Order.

60. Plaintiff's weekly earnings fell below the applicable federal minimum wage rate.

61. Plaintiff's weekly earnings fell below the contractually-promised AEWR.

62. Defendants did not supplement Plaintiff's weekly earnings to ensure that he received the wages required by the FLSA and his employment contract.

63. Defendants failed to make, keep, preserve, and retain accurate employment records, as required by the FLSA,[24] and by the H-2A regulations,[25] with respect to Plaintiff's work.

64. Defendants provided Plaintiff with earning statements containing inaccurate information regarding the amount of hours worked, the units harvested, and the wages earned by Plaintiff.

65. Defendants continued to fail to provide Plaintiff three meals per day, and the meals that were actually provided by Defendants were inadequate.

66. Defendants continued to deduct meal charges from Plaintiff's paychecks. The amount deducted by Defendants for meals exceeded the actual cost incurred by Defendants to provide meals to Plaintiff.

---

[24] 29 C.F.R. § 516.2(a)
[25] 20 C.F.R. § 655.122(j)

13

Return Transportation

67. Plaintiffs completed their respective employment contracts with Defendants.

68. At the end of their contracts, some of the Plaintiffs incurred expenses to travel back to their hometowns in Mexico, including daily subsistence, and bus or plane tickets.

69. Defendants failed to reimburse these Plaintiffs for their return transportation and daily subsistence from the place of employment to Plaintiffs' hometowns in Mexico.

## CLAIM I: FAIR LABOR STANDARDS ACT

70. Plaintiffs' FLSA consent forms are attached as part of composite Exhibit 3.

71. Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

72. Defendants failed to pay Plaintiffs, at least, the federal minimum wage rate of $7.25 for every compensable hour of labor performed in a workweek.

73. The violations set forth in this Claim resulted, in part, from Defendants' failure to timely reimburse the expenses described in paragraphs 30 and 31, which Plaintiffs incurred primarily for the benefit of Defendants.  These expenses brought Plaintiffs' first week's earnings below the federal minimum wage rate.

74. The violations set forth in this Claim resulted, in part, from Defendants' failure to credit and pay Plaintiffs for all compensable time worked.

75. The violations set forth in this Count resulted, in part, from Defendants' improper meal deductions.

76. The violations set forth in this Count resulted, in part, from Defendant's failure to supplement Plaintiffs' piece-rate wages to equal or exceed the federal minimum wage.

77. As a result of Defendants' violations of the FLSA set forth in this Claim, Plaintiffs are entitled to recover the amount of their unpaid wages and an equal amount as liquidated damages for each workweek in which they earned less than the federal minimum wage.[26]

## CLAIM II: GEORGIA BREACH OF CONTRACT
(All Plaintiffs)

78. Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

79. Defendants offered Plaintiffs employment under the terms and conditions set out in the Georgia Job Order.

80. Plaintiffs accepted Defendants' job offer.

81. Defendant failed to provide housing that met local, state and federal requirements.

82. Defendant failed to provide Plaintiffs with three adequate meals per day.

83. Defendant made improper wage deductions for meals from Plaintiffs' paychecks.

84. Defendants failed to pay Plaintiffs the AEWR and/or failed to supplement Plaintiffs' piece rate earnings so that Plaintiffs would earn, at least, what they would have earned had they been paid the AEWR for each compensable hour of work.

85. Defendants failed to keep and maintain accurate earning records.

86. Defendants failed to furnish to Plaintiffs on each pay period an accurate written earning statement.

87. Defendants failed to fully reimburse Plaintiffs for their pre-employment expenses at the 50% point of their contracts.

---

[26] 29 U.S.C. § 216(b)

88. Defendants failed to provide or pay for Plaintiffs' return transportation and daily subsistence from the place of employment to Plaintiffs' hometowns in Mexico.

89. As a direct consequence of Defendants' breaches of Plaintiffs' employment contracts, Plaintiffs suffered economic injury.

90. Defendants are liable to Plaintiffs for the damages that arose naturally and according to the usual course of things from Defendants' breaches, as provided by federal common law and Georgia contract law.

### CLAIM III: WISCONSIN BREACH OF CONTRACT
### (Plaintiff Alvaro Bonilla Gomez)

91. Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

92. Defendants offered employment to Plaintiff Bonilla Gomez on the terms and conditions set out in the Wisconsin Job Order.

93. Plaintiff Bonilla Gomez accepted Defendants' job offer.

94. Defendants failed to pay Plaintiff Bonilla Gomez the AEWR and/or failed to supplement Plaintiff's piece rate earnings so that Plaintiff would earn, at least, what he would have earned had he been paid the AEWR for each compensable hour of work.

95. Defendants failed to keep and maintain accurate earning records with respect to Plaintiff Bonilla Gomez's work.

96. Defendants failed to furnish to Plaintiff Bonilla Gomez on each pay period an accurate written earning statement.

97. As a direct consequence of Defendants' breaches of Plaintiff Bonilla Gomez's employment contract, Plaintiff suffered economic injury.

98. Defendants are liable to Plaintiff Bonilla Gomez for the damages that arose naturally and according to the usual course of things from Defendants' breaches, as provided by federal common law and Wisconsin contract law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

(a) Grant judgment against Defendants, jointly and severally, in favor of Plaintiffs on their FLSA claims as set out in Claim 1, and award each of them the amount of their unpaid minimum wages and an equal amount as liquidated damages;

(b) Grant judgment against Defendants, jointly and severally, in favor of Plaintiffs on their breach of contract claims, as set out in Claim 2, and award each of them their actual damages arising from Defendants' contractual breaches;

(c) Grant judgment against Defendants, jointly and severally, in favor of Plaintiff Alvaro Bonilla Gomez, on his breach of contract claim, as set out in Claim 3, and award him his actual damages arising from Defendants' contractual breaches;

(d) Award Plaintiffs pre- and post-judgment interest as allowed by law;

(e) Award Plaintiffs attorney's fees and the costs of this action; and

(f) Award Plaintiffs such further relief, at law or in equity, as this Court deems just and proper.

This 11th day of October, 2019.                    Respectfully submitted,

*/s/ Solimar Mercado-Spencer*

Solimar Mercado-Spencer
Lead Counsel
Georgia Bar No. 686614

Georgia Legal Services Program
104 Marietta Street NW, Suite 250
Atlanta, GA  30303
Phone:  (404) 463-1633
Fax:      (404) 463-1623
E-mail: smercado-spencer@glsp.org


*/s/ Lisa J. Krisher*

Lisa J. Krisher
Georgia Bar No. 429762
Georgia Legal Services Program
104 Marietta Street NW, Suite 250
Atlanta, GA  30303
Phone:  (404) 463-1633
Fax:      (404) 463-1623
E-mail: lkrisher@glsp.org

*Attorneys for Plaintiffs*